UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JASON CAMACHO AND ON BEHALF OF             :
ALL OTHERS SIMILARLY SITUATED,             :        Civil Action No. 1:18-cv-10694-KFP
                                           :
            Plaintiff,                     :
      v.                                   :
                                           :
VANDERBILT UNIVERSITY,                     :
                                           :
            Defendant.                     :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

_____

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

_____

John W. Egan
Seyfarth Shaw LLP
jegan@seyfarth.com
620 Eighth Avenue
New York, New York  10018
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

Julia N. Sarnoff
Seyfarth Shaw LLP
jsarnoff@seyfarth.com
975 F Street NW
Washington, D.C. 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393
*Pro Hac Vice to be filed*

*Attorneys for Defendant Vanderbilt
University*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ................................................................................................................................... 3

I.     VANDERBILT UNIVERSITY ..................................................................................... 3

II.    THE ACTION .............................................................................................................. 4

ARGUMENT .......................................................................................................................... 6

I.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER
VANDERBILT ............................................................................................................. 6

     A.     The Court Lacks General Personal Jurisdiction Over Vanderbilt ......................... 7

     B.     The Court Lacks Specific Personal Jurisdiction Over Vanderbilt ......................... 8

         1.     CPLR § 302(a)(2), (3), And (4) Do Not Apply .......................................... 9

         2.     Plaintiff's Claims Did Not Arise Out Of A Transaction Of
Business In New York Under CPLR § 302(a)(1) ..................................... 10

             (a)     Plaintiff's Claims Did Not Arise Out Of The Fair....................... 10

             (b)     The Allegations Regarding The Website Do Not Confer
Personal Jurisdiction Over Vanderbilt ......................................... 11

                 i.     The Website Is Not "Interactive"...................................... 11

                 ii.     The Website Content At Issue Does Not Confer
Personal Jurisdiction Over Vanderbilt ............................. 12

II.    THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION OVER
THIS ACTION............................................................................................................ 15

     A.     Legal Standard Under Fed. R. Civ. P. 12(b)(1) .................................................. 15

     B.     Plaintiff Has Failed To Demonstrate An Actual Injury Or Any Likelihood
of Future Injury .................................................................................................. 16

         1.     Plaintiff Faces No Real and Immediate Threat of Future Injury ............. 16

         2.     Plaintiff Did Not Suffer A Concrete And Particularized Injury ............... 18

CONCLUSION...................................................................................................................... 21

57575036v.6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*,
No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005)..........................17

*Access for the Disabled, Inc. v. Rosof*,
No. 805CV1413T30TBM, 2005 WL 3556046 (M.D. Fla. Dec. 28, 2005) .............................17

*Amideax Trading Grp. v. S.W.I.F.T. SCR*,
671 F.3d 140 (2d Cir. 2011)...................................................................................................15

*Bacon v. Walgreens Co.*,
91 F. Supp. 3d 446 (E.D.N.Y. 2015) .....................................................................................21

*Bauman v. Garfinkle*,
235 A.D.2d 245, 652 N.Y.S.2d 32 (1st Dep't 1997) ..............................................................9

*Bernstein v. City of New York*,
621 F. App'x 56 (2d Cir. 2015) .......................................................................................15, 16

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)......................................................................................10, 11, 14

*Brother v. Rossmore Tampa Ltd. P'ship*,
No. 8:03CV1253T-24MAP, 2004 WL 3609350 (M.D. Fla. Aug. 19, 2004) .........................17

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)....................................................................................................8

*Brown v. Web.com Grp., Inc.*,
57 F. Supp. 3d 345 (S.D.N.Y. 2014).....................................................................................14

*Coll. Essay Optimizer, LLC v. Edswell, Inc.*,
No. 14-cv-8586, 2015 WL 5729681 (S.D.N.Y. Sept. 30, 2015) .............................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)............................................................................................................7, 8

*DH Servs., LLC v. Positive Impact, Inc.*,
No. 12-cv-6153, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) ...................................................6

*Diaz v. The Kroger Co.*,
18 Civ. 7953 (S.D.N.Y. June 4, 2019) (Failla, J.)................................................................11

*Faherty v. Spice Entm't, Inc.*,
   No. 04-cv-2826, 2005 WL 2036018 (S.D.N.Y. Aug. 18, 2005)................................................7

*Feltzin v. Clocktower Plaza Properties, Ltd.*,
   No. 16-cv-4329, 2018 WL 1221153 (E.D.N.Y. Mar. 3, 2018)..........................................16, 20

*Feltzin v. Stone Equities, LLC*,
   No. CV166457SJFAKT, 2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018)..................................17

*G31000 N. Am., Inc. v. Paris*,
   No. 14-CV-3885 (VEC), 2014 WL 6604790 (S.D.N.Y. Nov. 21, 2014) ................................6

*Garnet v. Ramos Bros. Inc.*,
   No. 16-cv-2792, 2017 WL 590323 (E.D.N.Y. Jan. 17, 2017)................................................16

*Girl Scouts of the U.S. v. Steir*,
   102 F. App'x 217 (2d Cir. 2004) ........................................................................................12

*Gladstone Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979)..............................................................................................................18

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014)..................................................................................................8

*Harty v. Greenwich Hosp. Grp., LLC*,
   536 F. App'x 154 (2d Cir. 2013) ........................................................................................16

*Holt v. Am. City Diner, Inc.*,
   No. CIV. 05-1745 (CKK), 2007 WL 1438489 (D.D.C. May 15, 2007)................................17

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)..................................................................................................7

*Johnson v. Ward*,
   4 N.Y.3d 516 (2005) ..........................................................................................................10

*Kurzon v. Thomas M. Cooley Law Sch.*,
   No. 12-cv-8352, 2014 WL 2862609 (S.D.N.Y. June 24, 2014) ..........................................10

*Lerner v. Fleet Bank N.A.*,
   318 F.3d 113 (2d Cir. 2003)................................................................................................20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................15

*M. Shanken Communs., Inc. v. Cigar500.com*,
   No. 07-cv-7371, 2008 WL 2696168 (S.D.N.Y. July 7, 2008)..............................................12

iii

*Magee v. Coca-Cola Refreshments USA, Inc.*,
   833 F.3d 530 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017) ...........................................18

*Mendez v. Apple, Inc.*,
   No. 18-cv-07550 (Preska, J.) ...................................................................................18, 19, 20

*Meyer v. Bd. of Regents*,
   No. 13-cv-3128, 2014 WL 2039654 (S.D.N.Y. May 14, 2014) ...........................................10

*Moser v. Pollin*,
   294 F.3d 335 (2d Cir. 2002) .................................................................................................15

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
   386 F.3d 107 (2d Cir. 2004) .................................................................................................15

*Norkunas v. Wynn Resorts Holdings, LLC*,
   No. 2:07CV00096RLHPAL, 2007 WL 2949569 (D. Nev. Oct. 10, 2007) ...........................17

*Ortiz v. Westchester Med. Ctr. Health Care Corp.*,
   No. 15 CIV. 5432 (NSR), 2016 WL 6901314 (S.D.N.Y. Nov. 18, 2016) .............................18

*Rivera v. Heyman*,
   157 F.3d 101 (2d Cir. 1998) ...................................................................................................9

*Sae Han Sheet Co. v. Eastman Chem. Corp.*,
   No. 17-cv-2734, 2017 WL 4769394 (S.D.N.Y. Oct. 18, 2017) ...............................................7

*Saudi v. Marine Atl., Ltd.*,
   306 F. App'x 653 (2d Cir. 2009) ............................................................................................7

*See Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*,
   No. 2:17-cv-04377, 2018 U.S. Dist. LEXIS 64537 (E.D.N.Y. Apr. 17, 2018) ......................13

*Seldon v. Direct Response Techs., Inc.*,
   No. 03-cv-5381, 2004 WL 691222 (S.D.N.Y. Mar. 30, 2004) ...............................................14

*Skrodzki v. Marcello*,
   810 F. Supp. 2d 501 (E.D.N.Y. 2011) ...................................................................................10

*Small v. Gen. Nutrition Companies, Inc.*,
   388 F. Supp. 2d 83 (E.D.N.Y. 2005) .....................................................................................17

*Southern New England Tel. Co. v. Global NAPS Inc.*,
   624 F.3d 123 (2d Cir. 2010) ...................................................................................................6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...........................................................................................................18

iv

*SPV OSUS, Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)............................................................................7

*Stoud v. Tyson Goods, Inc.*,
   91 F. Supp. 3d 381 (E.D.N.Y. 2015) ...............................................................8

*Sullivan v. BH Media Group, Inc.*,
   No. 17 Civ. 8139 (Daniels, J.) ......................................................................14

*Thackurdeen v. Duke Univ.*,
   130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016)........................8

*Touro Coll. v. Fondazione Touro Univ. Rome Onlus*,
   No. 16-cv-3136, 2017 WL 4082481 (S.D.N.Y. Aug. 31, 2017)........................................11, 14

*Triangle Properties*,
   No. 14-cv-5131, 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y Dec. 15, 2016)..........................20

*Weerahandi v. Am. Statistical Ass'n*,
   No. 14-cv-7688, 2015 WL 5821634 (S.D.N.Y. Sept. 30, 2015) ...............................................9

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)............................................................................6

**Statutes**

Americans with Disabilities Act ........................................................................ *passim*

Higher Education Opportunity Act of 2008............................................................13

New York City Human Rights Law....................................................................9

New York State Human Rights Law ...................................................................9

**Other Authorities**

28 C.F.R. § 36.303(c)....................................................................................18

C.P.L.R. § 301.............................................................................................7

C.P.L.R. § 302.............................................................................................7

C.P.L.R. § 302(a) ........................................................................................10

C.P.L.R. § 302(a)(1) .................................................................................. *passim*

C.P.L.R. § 302(a)(2) ...............................................................................1, 8, 9

C.P.L.R. § 302(a)(3) ...................................................................................1, 9

C.P.L.R. § 302(a)(4) .................................................................................................1, 9, 10

Fed. R. Civ. P. 12(b)(1)...........................................................................................3, 15, 19, 20

Fed. R. Civ. P. 12(b)(2)................................................................................................ *passim*

U.S. Const. Art. III, § 2.................................................................................................15

## PRELIMINARY STATEMENT

In this action, Plaintiff Jason Camacho ("Plaintiff") claims that Vanderbilt University ("Vanderbilt" or the "Defendant") maintains a website, www.vanderbilt.edu (the "Website"), that is not accessible to individuals who are visually impaired under Title III of the Americans with Disabilities Act ("ADA") and related state and city laws.  The Court should dismiss this action because it does not have personal jurisdiction over Vanderbilt, or subject matter jurisdiction over this action.

The Court does not have *general* personal jurisdiction over Vanderbilt.  This institution is not incorporated in New York, and does not have its principal place of business in the state.  It has insufficient contacts with New York to qualify as an "exceptional case" warranting the exercise of general personal jurisdiction under these circumstances, and Plaintiff does not allege otherwise.  In addition, the Court does not have *specific* personal jurisdiction over Vanderbilt under the New York long arm statute.  Plaintiff fails to allege a tort, or a claim arising out of real property, for purposes of CPLR 302(a)(2)-(3) and 302(a)(4), respectively.  Also, neither Vanderbilt's attendance at a student recruitment fair last year (the "Fair") nor the functionality of its website qualify as a transaction of business in the state from which Plaintiff's claims arose under CPLR 302(a)(1).

Plaintiff alleges that he attended the Fair in New York City on November 5, 2018 and afterwards attempted to access the Website with his screen reader when he encountered certain barriers to access.  Plaintiff did not communicate with Vanderbilt's representatives at the Fair or thereafter.  He filed this and 49 other, nearly identical lawsuits against attendee institutions from across the country within 8 days of the event.  Nineteen of these institutions who are also represented by the undersigned, are moving to dismiss, and attest in their motion and pre-motion papers that Plaintiff did not communicate with their representatives at the Fair either.  Plaintiff's

1

claims are unrelated to any acts or omissions by Vanderbilt at the Fair and do not arise out of this event for jurisdictional purposes.

Plaintiff has twice amended the Complaint to add allegations attesting to the Website's so-called "interactive" features, many of which are also included in pleadings and motion filings in the actions that Plaintiff has filed against 19 other Fair attendees. Under prevailing authority in this Circuit, examining a website's interactivity may be useful for the District Court, but only to the extent it helps to determine whether the institution has purposefully availed itself of this forum. There was no such purposeful availment here.

The Website features at issue here are not "interactive." They do not provide for the knowing transmission of goods or services into New York but instead, at best, facilitate an exchange of information between Vanderbilt and prospective students. They are not targeted to New York over other states where Vanderbilt recruits students. The allegations directed at the Website are also largely inaccurate and grossly exaggerate its functionality. Accordingly, dismissal is warranted under Federal Rule 12(b)(2).

Apart from the lack of personal jurisdiction over Vanderbilt, Plaintiff cannot satisfy his burden to show standing. Plaintiff's lack of engagement at the Fair with Vanderbilt representatives (and those from at least 19 other institutions), squarely undermine both (1) his conclusory and largely "cut and paste" allegations of harm, and (2) his claim that alleged Website barriers are somehow preventing him from visiting 50 colleges and universities from 19 states, 42 cities, and the District of Columbia. The Second Amended Complaint is utterly silent on why Plaintiff has an interest in Vanderbilt or why he would return to the Website or visit Defendant's campus in the future.

2

As the tide of website-related ADA lawsuits continues to swell in this jurisdiction, federal courts are nonetheless only authorized by the U.S. Constitution to decide "Cases" and "Controversies."  Plaintiff must establish an injury that is both concrete and particular to him. Additionally, he must show a likelihood that injury in the future is imminent to support any claim for an injunction, which is the only relief available under Title III of the ADA.  As a court in this District recently held in dismissing a similar complaint filed by Plaintiff's counsel, an ADA plaintiff who files nearly identical lawsuits en masse must show that "the harms to be remedied do exist and are indeed identical," and "those who live by the photocopier shall die by the photocopier."  As there is no plausible basis from which the Court can conclude that Plaintiff has suffered an actual injury, and will suffer one in the future unless the Court issues an injunction, this action should be dismissed under Federal Rule 12(b)(1) as well.

## FACTS

### I.  VANDERBILT UNIVERSITY

Vanderbilt is organized under the laws of Tennessee and has its principal place of business in Nashville, Tennessee.  (Declaration of John O. Gaines, dated June 20, 2019, ("Gaines Dec.") at ¶ 3.)  It does not own, operate, lease or otherwise possess real property in New York, does not have a registered agent in New York, and does not hold any physical classes or seminars in the state.  (*Id.* at ¶¶ 4-7.)  Vanderbilt does not target New York over other states where it recruits students, and it participated in approximately 2,760 recruitment events in states throughout the country in the Fall of 2018 alone.  (*Id.* at ¶ 8.)  Plaintiff is not a current student in, or applicant to, any of Vanderbilt's programs.  (*Id.* at ¶¶ 13.)  Additionally, the Website was neither created nor maintained in New York, and there are no individuals working or residing in New York who can alter or create any content for the Website.  (*Id.* at ¶ 10.)

## II.    THE ACTION

This action concerns the Website, which is owned and operated by Vanderbilt. (Declaration of John W. Egan dated June 21, 2019 ("Egan Dec."), Exhibit "D" (Second Amended Complaint or "Sec. Am. Compl.") at ¶¶ 31-32, 36-37.)  Plaintiff alleges that he is visually impaired and that, on November 5, 2018, he attended the Fair in New York.  (*Id*. at ¶¶ 33-34.)  Plaintiff did not visit the booth of Vanderbilt or at least 19 other colleges and universities that attended the Fair that are defending nearly identical lawsuits.[1]  (Declaration of Thomas R. Crespo, dated June 20, 2019 ("Crespo Dec.") at ¶¶ 3-5.)  Plaintiff thereafter commenced this lawsuit against Vanderbilt, as well as at least 49 other institutions of higher learning based on alleged barriers to access on their respective websites within 8 days of the Fair. (Sec. Am. Compl. at ¶¶ 36-37; Declaration of Susan Ryan dated June 21, 2019 ("Ryan Dec.") at ¶¶ 5-6.)

Plaintiff alleges that he attempted to access the Website shortly after attending the Fair on November 5, 2018.  He alleges that the Website provides informational content to prospective students and members of the public throughout the United States that is not sufficiently

---

[1] Defendants in the following *Camacho* actions are in the process of filing similar motions as Vanderbilt in response to the Amended Complaint and have averred, or will aver, that Plaintiff did not visit their respective booth at the Fair or otherwise initiate communications of any kind:  *Camacho v. Bennington College Corp.*, Case No.: 1:18-cv-10541-DAB (S.D.N.Y.); *Camacho v. California Institute of the Arts*, Case No.: 1:18-cv-10575-GBD (S.D.N.Y.); *Camacho v. DeSales University*, Case No.: 1:18-cv-10596-RA (S.D.N.Y.); *Camacho v. Drexel University*, Case No.: 1:18-cv-10597-LTS-RWL (S.D.N.Y.); *Camacho v. Emerson College*, Case No.: 1:18-cv-10600-ER (S.D.N.Y.); *Camacho v. Lawrence University*, Case No.: 1:18-cv-10850-PGG-RWL (S.D.N.Y.); *Camacho v. Loyola University New Orleans*, Case No.: 1:18-cv-10816-PAE-HBP (S.D.N.Y.); *Camacho v. Muhlenberg College*, Case No.: 1:18-cv-10761-GBD (S.D.N.Y.); *Camacho v. Northeastern University*, Case No.: 1:18-cv-10693-ER (S.D.N.Y.); *Camacho v. Oberlin College and Conservatory*, Case No.: 1:18-cv-10814-VEC (S.D.N.Y.); *Camacho v. Gettysburg College*, Case No.: 1:18-cv-10822-JPO (S.D.N.Y.); *Camacho v. Rider University*, Case No.: 1:18-cv-10700-ER (S.D.N.Y.); *Camacho v. Sacred Heart University Inc.*, Case No.: 1:18-cv-10697-DAB (S.D.N.Y.); *Camacho v. Southern Methodist University Inc.*, Case No.: 1:18-cv-10695-DAB (S.D.N.Y.); *Camacho v. Stevens Inst. Of Tech.*, Case No.: 1:18-cv-10765-DAB (S.D.N.Y.); *Camacho v. Stevenson University Inc.*, Case No.: 1:18-cv-10825-RWS (S.D.N.Y.); *Camacho v. The Catholic University of America*, Case No.: 1:18-cv-10586-PGG (S.D.N.Y.); *Camacho v. University of New Haven*, Case No.: 1:18-cv-10760-PGG (S.D.N.Y.); *Camacho v. Point Park University*, Case No.: 1:18-cv-10887-JGK (S.D.N.Y.)

4

compatible with screen reader technology for the blind or visually impaired.  In this and Plaintiff's 49 other lawsuits against institutions that attended the Fair, he specifically, and repeatedly, alleges that inaccessible content on the websites relate to such basic information as the institutions' course and degree offerings, campus location and hours, tuition and financial aid, career services, accreditation, faculty, campus security, transfer credits, and textbooks.  (Sec. Am. Compl. at ¶¶ 23, 31, 36, 37(a), 43; Ryan Dec. at ¶ 6.)  In all these cases, which Plaintiff has filed against colleges and universities in 19 states, 42 cities, and the District of Columbia, he specifically alleges that he "intends to visit Defendant's school in the near future if he could access their website."  (Sec. Am. Compl. at ¶ 43; Ryan Dec. at ¶¶ 5-6.)  Further, Plaintiff identifies four categories of barriers under the Web Content Accessibility Guidelines ("WCAG") that he alleges he encountered "[w]hile attempting to navigate the Website": "Lack of Alternative Text," "Empty Links That Contain No Text," "Redundant Links," and "Linked Images missing Alt-text."  (Sec. Am. Compl. at ¶ 37; Ryan Dec. at ¶ 6.)

Plaintiff has amended his Complaint two times in this action.  His first amendment, on March 21, 2019, followed a pre-motion conference in a case that Plaintiff filed against Point Park University, another institution that attended the Fair (*see Camacho v. Point Park Univ.*, No. 1:18-cv-10887-JGK).  (Egan Dec. at ¶ 3, Exhibit "B" (First Amended Complaint ("First Am. Compl.".)  The First Amended Complaint added two paragraphs in support of Plaintiff's legal claim that the Website is "interactive" for purposes of personal jurisdiction.  (First Am. Compl. at ¶¶ 10-11.)  Specifically, the First Amended Complaint averred that the Website offers "prospective students" the ability to apply online, schedule a visit or a meeting with Vanderbilt personnel, and use a "financial aid calculator" to ascertain qualifications for merit-based awards and determine the nature and extent of financial aid that would be available to prospective

students.  (First Am. Compl. at ¶ 10.)  Plaintiff made similar amendments to the pleadings in the

19 other website accessibility cases he has filed against Fair attendees that are also moving to

dismiss.[2]

Plaintiff amended his Complaint for a second time following the May 7, 2019 pre-motion

conference in this case.  (Egan Dec. at ¶ 5, Exhibit "F" (Transcript of May 7, 2019 Pre-motion

Conference ("Transcript")).)  The Second Amended Complaint includes one new paragraph

alleging WCAG-related issues with the Website, including with respect to the "net price

calculator."  (Sec. Am. Compl. at ¶ 11.)  The only alleged connection between the Website and

New York is the allegation that Plaintiff accessed the Website while present in this forum.  (*Id.* at

¶ 35.)

## ARGUMENT

## I.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER VANDERBILT

The Court should dismiss this action under Federal Rule 12(b)(2) because the Court does

not have personal jurisdiction over Vanderbilt.  Plaintiff has the burden of proof once served

with a Rule 12(b)(2) motion.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.

2001); *G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885 (VEC), 2014 WL 6604790, at *2

(S.D.N.Y. Nov. 21, 2014).  He must make a specific averment of facts that are sufficiently

supported to demonstrate that the Court has jurisdiction.  *DH Servs., LLC v. Positive Impact,*

*Inc.*, No. 12-cv-6153, 2014 WL 496875, at *2 (S.D.N.Y. Feb. 5, 2014) (citing *Southern New*

*England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).  Further, Plaintiff must

satisfy his burden to make out a *prima facie* case before he can seek jurisdictional discovery.

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998).  New York law applies to this

---

[2] *See supra*, n.1.

inquiry. *See Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14-cv-8586, 2015 WL 5729681, at

*3 (S.D.N.Y. Sept. 30, 2015) (law of forum state applies in federal question cases involving

statutes without their own jurisdictional provisions); *Faherty v. Spice Entm't, Inc.*, No. 04-cv-

2826, 2005 WL 2036018, at *4 (S.D.N.Y. Aug. 18, 2005) (law of forum state applies in diversity

actions).

To assess whether it has personal jurisdiction over Vanderbilt, the Court must evaluate

whether there is general jurisdiction under C.P.L.R. § 301, or specific personal jurisdiction under

the New York long arm statute, C.P.L.R. § 302.  If either exists, the Court must determine

whether the exercise of jurisdiction comports with due process. *Saudi v. Marine Atl., Ltd.*, 306

F. App'x 653, 654-55 (2d Cir. 2009).  While general personal jurisdiction permits a court to hear

any claims against a non-domiciliary defendant, specific jurisdiction, in contrast, "is confined to

adjudication of issues deriving from, or connected with, the very controversy that establishes

jurisdiction." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (quotation and

citation omitted).

### A.      The Court Lacks General Personal Jurisdiction Over Vanderbilt

To assert general personal jurisdiction, a foreign corporation must have contacts that are

so "continuous and systematic" that they render the corporation essentially "at home" in the

forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  Absent an "exceptional

case," general personal jurisdiction will only exist over a foreign corporation in New York if it is

(1) incorporated in the state, or (2) has its principal place of business in New York. *See Id*. at

139 n.19; *Sae Han Sheet Co. v. Eastman Chem. Corp.*, No. 17-cv-2734, 2017 WL 4769394, at *6

(S.D.N.Y. Oct. 18, 2017) (no personal jurisdiction in New York because defendant was neither

incorporated nor had its principal place of business in the state).

Here, Plaintiff concedes that Vanderbilt is not incorporated in New York, does not have its principal place of business in the state, and does not have any contacts that would qualify as an "exceptional case" warranting the exercise of general personal jurisdiction.[3]  (Gaines Dec. at ¶¶ 3-8; Sec. Am. Compl. at ¶ 21.)  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (internal citations omitted) (without incorporating or having principal place of business in New York, even "systematic and continuous" contacts "extraordinarily unlikely to add up to an 'exceptional case'"); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 799-800 (S.D.N.Y. 2015) ("myriad of cases" hold that national universities not subject to general personal jurisdiction "outside of their state of incorporation or operation"), *aff'd*, 660 F. App'x 43, 45 (2d Cir. 2016).  Thus, the only issue under Federal Rule 12(b)(2) is whether Plaintiff's claims arose out of Vanderbilt's contacts with New York to confer specific jurisdiction.  *Stoud v. Tyson Goods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015).

**B.     The Court Lacks Specific Personal Jurisdiction Over Vanderbilt**

A non-domiciliary defendant is subject to specific personal jurisdiction in New York only if the plaintiff's claims "aris[e]" from one of four (4) specifically enumerated acts under the New York long-arm statute:

(1)  transaction of any business in New York or contracts anywhere to supply goods or services in New York, C.P.L.R. § 302(a)(1);

(2) commission of a tortious act in New York, except as to a cause of action for defamation of character arising from the act, C.P.L.R. § 302(a)(2);

(3) commission of a tortious act outside of New York causing injury to persons or property in New York, if the non-domiciliary:

---

[3] The Second Circuit has applied *Daimler* to hold that even a foreign corporation that maintains an office in New York does not qualify as an "exceptional case."  *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19).

8

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce, CPLR 302(a)(3); or

(4) ownership, use, or possession of any real property situated within the New York, CPLR 302(a)(4).

Sections 302(a)(2), 302(a)(3), and 302(a)(4) are plainly inapplicable to the matter at hand, and Plaintiff also cannot show that his claims for relief arose from a transaction of business in New York under Section 302(a)(1).

### 1.    CPLR § 302(a)(2), (3), And (4) Do Not Apply

Plaintiff cannot establish specific jurisdiction under Section 302(a)(2) or Section 302(a)(3).  Plaintiff alleges that Vanderbilt failed to provide internet content that is sufficiently compatible with current screen reader technology, based on his interpretation of the ADA, as well as state and municipal civil rights laws.  As none of these discrimination claims arose out of a common law duty, the Second Amended Complaint does not allege a tort in the first instance. *See Bauman v. Garfinkle*, 235 A.D.2d 245, 652 N.Y.S.2d 32 (1st Dep't 1997) (ADA claims are not in tort); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (discrimination claims under the New York State Human Rights Law are not in tort); *Weerahandi v. Am. Statistical Ass'n*, No. 14-cv-7688, 2015 WL 5821634, at *4 (S.D.N.Y. Sept. 30, 2015) (no personal jurisdiction under CPLR 302(a)(2) or 302(a) because discrimination claims under federal law, the New York State Human Rights Law, and the New York City Human Rights Law are not in tort).

Further Vanderbilt does not own, use, or possess any real property in New York as required to confer jurisdiction under Section 302(a)(4).  (Gaines Dec. at ¶¶ 4, 6-7.)  Plaintiff does

9

not allege otherwise.  This action does not relate to real property and thus Section 302(a)(4) does not apply as well.

### 2.  Plaintiff's Claims Did Not Arise Out Of A Transaction Of Business In New York Under CPLR § 302(a)(1)

To demonstrate specific personal jurisdiction under Section 302(a)(1) of the New York long-arm statute, Plaintiff must show, not only that Vanderbilt transacted business in the state, but that his claims arise out of those transactions.  CPLR 302(a); *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 508 (E.D.N.Y. 2011).  The Second Circuit has held that there must be an "articulable nexus, or a substantial relationship" between the plaintiff's claims, on one hand, and the defendant's acts occurring in New York, on the other.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citations omitted).  *See also Johnson v. Ward,* 4 N.Y.3d 516, 519 (2005) (requiring "substantial relationship" between plaintiff's claims and the New York-based transaction of business for the exercise of jurisdiction under Section 302(a)(1).  Here, Plaintiff cannot demonstrate a transaction of business in New York with the requisite connection to his claims.

### (a)  Plaintiff's Claims Did Not Arise Out Of The Fair

Plaintiff's claims concern the accessibility of the Website rather than any alleged acts or omissions by Vanderbilt at the Fair.  It is undisputed that Plaintiff never communicated with Vanderbilt's personnel at the Fair, or at any time thereafter.  (Crespo Dec. at ¶¶ 3-6; Sec. Am. Compl. at ¶¶ 31-32, 36-37.)  Accordingly, Plaintiff's claims did not arise out of the Fair for purposes of Section 302(a)(1).[4]  *See Kurzon v. Thomas M. Cooley Law Sch.*, No. 12-cv-8352,

---

[4] The act of simply attending the Fair also does not qualify as purposeful business activity in New York.  Vanderbilt participated in approximately 2,670 college fairs and similar events throughout the country in Fall 2018.  (Gaines Dec. at ¶ 8.)  *See Meyer v. Bd. of Regents*, No. 13-cv-3128, 2014 WL 2039654, at *3-4 (S.D.N.Y. May 14, 2014) (activities of recruiting, soliciting, and receiving contributions nationwide, including from New York residents, are insufficient to confer personal jurisdiction).

2014 WL 2862609, at *5 (S.D.N.Y. June 24, 2014) (no specific jurisdiction under Section 302(a)(1) because plaintiff's claims were "not based on . . . [defendant's] law school recruitment fair participation" in New York).

**(b)      The Allegations Regarding The Website Do Not Confer Personal Jurisdiction Over Vanderbilt**

It is well-established in this Circuit that operating a website does not confer nationwide personal jurisdiction.  *See e.g. Best Van Lines*, 490 F.3d at 253 ("[t]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum") (quotation and citations omitted).  The Second Circuit has held that evaluating a website's interactivity "may be useful . . . but only insofar as it helps to decide whether . . . the defendant, through the website, purposefully avail[ed] himself of the privilege of conducting activities in New York, thus invoking the benefits and protections of its laws."  *Id.* at 252 (quotation and citations omitted).  Here, there was no transaction of business in New York through the Website that gave rise to Plaintiff's claims.

**i.      The Website Is Not "Interactive"**

An interactive website allows a non-domiciliary to knowingly transmit goods or services into New York.  *See Best Van Lines*, 490 F.3d at 251 (interactive websites allow residents of the forum state to enter into contracts with the defendant "that involve the knowing and repeated transmission of computer files over the Internet") (quotation omitted); *Diaz v. The Kroger Co.*, 18 Civ. 7953, at *15-18 (S.D.N.Y. June 4, 2019) (Failla, J.) (Egan Dec., Exhibit "L") (website that did not facilitate the sale of goods or services in New York held to be insufficiently "interactive" to confer personal jurisdiction in ADA Title III website accessibility action); *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, No. 16-cv-3136, 2017 WL 4082481, at *28-9

11

(S.D.N.Y. Aug. 31, 2017) (college website not "interactive" because not targeted to New York). Plaintiff's allegations concern, in contrast, access to information about Vanderbilt for a prospective student rather than a commercial transaction that may be completed online.  The allegations in the Second Amended Complaint do not even approach the degree of interactivity that may, without more, warrant the exercise of personal jurisdiction over a non-domiciliary website operator in New York.  *But cf. M. Shanken Communs., Inc. v. Cigar500.com*, No. 07-cv-7371, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008) (substantially interactive website allowed users to order products for delivery to New York and complete payments online).

### ii.     The Website Content At Issue Does Not Confer Personal Jurisdiction Over Vanderbilt

The gravamen of the various iterations of the Complaint is that Plaintiff was precluded from learning basic information about Vanderbilt such as, for example, its "school location and hours," "programs of instruction," and "cost of tuition."  (Sec. Am. Compl. at ¶¶ 23, 31, 36, 37(a), 43.)  Thus, what is at issue here is *informational content* transmitted to every state in the nation over the Website.  *See Girl Scouts of the U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (summary order) (no specific jurisdiction under Section 302(a)(1) based on informational website content "directed at the entire United States").  Other than relying on Vanderbilt's attendance at the Fair, which was one of thousands of similar events that Vanderbilt participates annually in various states, Plaintiff has not shown any connection to New York from which his claims arose.  (Gaines Dec. at ¶ 8.)

In the Second Amended Complaint, Plaintiff cites a laundry list of alleged "interactive" features of the Website, which would be included in most, if not all, websites of institutions of higher learning.  This includes the ability to send messages and submit forms to Vanderbilt over the Website, estimate tuition and potential financial aid, and pay tuition online.  (Sec. Am.

12

Compl. at ¶ 10.)  While Plaintiff included very similar "interactivity" allegations in the various amended pleadings (and declarations submitted in opposition to motions to dismiss) in cases he filed against Fair attendees, they cannot salvage Plaintiff's jurisdictional claim, for at least three reasons:

*First,* Plaintiff's allegations as to the Website's "interactivity" are exaggerated and inaccurate.  Prospective students cannot schedule meetings with any Vanderbilt personnel over the Website, for example.  (Sec. Am. Compl. at ¶ 10; Gaines Dec. at ¶ 16; Declaration of Brent B. Tener dated June 20, 2019 ("Tener Dec.") at ¶ 4.)  Further, they cannot apply for admission or financial aid over the Website.  (Sec. Am. Compl. at ¶ 10; Gaines Dec at ¶ 17; Tener Dec. at ¶ 5.)  Online applications for admission may be submitted over third-party websites, which Vanderbilt does not operate.  (Sec. Am. Compl. at ¶ 10; Gaines Dec at ¶ 17.)  Moreover, while Vanderbilt employs a "net price calculator" as required by the U.S. Department of Education ("DOE"), the Website explicitly states that the information provided by the "net price calculator" is an estimate and does not produce any indication of a student's potential to be admitted as a student at Vanderbilt.[5]  (Sec. Am. Compl. at ¶ 10; Tener Dec. at ¶ 6-8.)  These allegations do not satisfy Plaintiff's *prima facie* burden to show that his claims arose from acts of purposeful availment in the state of New York.[6]  *See Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc*., No. 2:17-cv-04377, 2018 U.S. Dist. LEXIS 64537, at *16-17 (E.D.N.Y. Apr. 17, 2018) (commercial website that directs customers to third parties to complete transactions not sufficiently "interactive" for specific jurisdiction under Section 302(a)(1)).

---

[5] *See* U.S. Department of Education, "Net Price Calculator Center," at https://nces.ed.gov/ipeds/netpricecalculator/#/ (posting of net price calculator required by the Higher Education Opportunity Act of 2008. . .).

[6] The only allegedly "interactive" content on the Website that Plaintiff attempted to access was the "net price calculator."  (Sec. Am. Compl. at ¶ 11.)  The Second Amended Complaint also asserts alleged WCAG issues with drop-down menus and pop-up boxes such as 'About,' 'Admissions,' 'Academics,' and 'Research,' which relates to informational rather than allegedly "interactive" content.  (*Id.*)

13

***Second,*** features that are provided on the Website that allow prospective students to communicate with Vanderbilt to obtain additional information do not constitute a transaction of business.  *See Touro Coll.*, 2017 WL 4082481, at *9-10 (website of non-domiciliary educational institution allowing potential students to send messages and submit forms over website did not confer personal jurisdiction over Section 302(a)(1)); *Seldon v. Direct Response Techs., Inc.*, No. 03-cv-5381, 2004 WL 691222, at *5 (S.D.N.Y. Mar. 30, 2004) (website of non-domiciliary company including interactive message boards did not confer personal jurisdiction where plaintiff did not establish that the message boards specifically targeted New York users).

***Third,*** Plaintiff is not a student in, or applicant to, any of Vanderbilt's programs.  (Crespo Dec. at ¶ 13.)  *See Sullivan v. BH Media Group, Inc.*, No. 17 Civ. 8139 (Daniels, J.) (Egan Dec., Exhibit "H"), at 2:23-25; 7:16-22; 20:13-26:22 (S.D.N.Y. May 15, 2018) (dismissing website accessibility action under Rule 12(b)(2) involving commercial website where the plaintiff was not among New York subscribers).

Thus, Plaintiff cannot demonstrate specific personal jurisdiction under Section 302(a)(1). For this reason, not only would the exercise of personal jurisdiction over Vanderbilt be contrary to the New York long arm statute, it would also violate due process.  *See Best Van Lines, Inc.*, 490 F.3d at 247 (New York courts apply the constitutional, purposeful availment standard when determining whether jurisdiction exists under Section 302(a)(1)); *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014) ("the "minimum contacts evaluation, overlaps significantly with New York's § 302(a)(1) inquiry into whether a defendant has transacted business in the State.")

II.     **THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION**

In addition to Federal Rule 12(b)(2), there is yet another independent reason why this action should be dismissed.  The Court does not have subject matter jurisdiction over the action because Plaintiff does not have standing.  Accordingly, the Court should dismiss this action under Rule 12(b)(1) as well.

A.      **Legal Standard Under Fed. R. Civ. P. 12(b)(1)**

Plaintiff has the burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002).  Although Plaintiff must "allege facts that affirmatively and plausibly suggest" that he has standing, *Amideax Trading Grp. v. S.W.I.F.T. SCR*, 671 F.3d 140, 145 (2d Cir. 2011), the Court should not draw inferences favorable to Plaintiff, and may consider materials extrinsic to the pleadings.  *J.S. ex. rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Conclusory allegations will not suffice to establish standing.  *See Amideax Trading Grp.*, 671 F.3d at 146-47 (citation omitted).

Article III of the U.S. Constitution limits the role of the federal judiciary to deciding only "Cases" and "Controversies."  U.S. CONST. ART. III, § 2.  Thus, to have standing to maintain this action, Plaintiff must show: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Since ADA Title III claims provide for injunctive relief only, Plaintiff has the additional burden to show that he faces a "real and immediate threat of future injury" through specific, non-conclusory averments.  *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (quotation and citation omitted).

15

**B.     Plaintiff Has Failed To Demonstrate An Actual Injury Or Any Likelihood of Future Injury**

**1.     Plaintiff Faces No Real and Immediate Threat of Future Injury**

To prove that he faces "a real and immediate threat of future injury," Plaintiff must allege *facts* making it "*reasonable* to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future . . . ." *Feltzin v. Clocktower Plaza Properties, Ltd.*, No. 16-cv-4329, 2018 WL 1221153, at *5 (E.D.N.Y. Mar. 3, 2018) (emphasis added). The Second Circuit has held that a "concrete plan" to return is required in ADA Title III cases, which must be supported by factual enhancement. *Harty v. Greenwich Hosp. Grp., LLC,* 536 F. App'x 154, 155 (2d Cir. 2013); *Bernstein v. City of N.Y.*, 621 F. App'x 56, 58-59 (2d. Cir. 2015).

Here, Plaintiff has provided no such facts. The Second Amended Complaint alleges only that Plaintiff visited the Website after the Fair and that he "intends to visit Defendant's school in the near future if he could visit their website." (Sec. Am. Compl. at ¶¶ 35-37, 42-43.) These vague and conclusory statements are plainly insufficient to establish "a real and immediate threat of future injury," as required by the Second Circuit for ADA Title III standing. Plaintiff's standing is also undermined by the fact that he included the same conclusory allegation that he "intends to visit Defendant's school in the near future" in all 50 of his college and university cases, which concern institutions in 42 cities (plus the District of Columbia), and 19 states as distant and varied as, for example, California, Georgia, Louisiana, Wisconsin, and Texas. (Ryan Dec. at ¶ 5-6.)

Courts in the Second Circuit have found no standing under similar circumstances. For instance, in *Garnet v. Ramos Bros. Inc.*, No. 16-cv-2792, 2017 WL 590323, at *3 (E.D.N.Y. Jan. 17, 2017), the plaintiff said that he "continues to desire to visit the Subject Property in the

future," with no further details.  The court found that the plaintiff had not established an intent to return to the property.  Likewise, in *Feltzin v. Stone Equities, LLC*, the court held that the plaintiff's claim that he "plan[ned] to return to the [P]roperty once the barriers to access are corrected" both as a customer and a tester was "tantamount to an intent to return someday in the future" and insufficient to establish standing.  *Feltzin v. Stone Equities, LLC*, No. CV166457SJFAKT, 2018 WL 1115135, at *2, 11 (E.D.N.Y. Feb. 8, 2018) (internal quotations omitted).  The court reached this conclusion even though the plaintiff traveled to the area near the property on many occasions and was originally from the county in which the property is located.[7]  *Id*. at *2.  *See also Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 89 (E.D.N.Y. 2005) (plaintiff does not face imminent harm at six store locations because he had only alleged that he has a "general desire to patronize [defendant's] stores").

Plaintiff also cannot demonstrate imminent injury considering that he elected not to take advantage of readily available means to obtain audible, personalized information and assistance at the Fair.  ADA regulations contemplate a dialogue between a public accommodation and an individual with a visual or hearing disability in terms of what type of auxiliary aid or service to provide, but the decision ultimately rests with the public accommodation so long as the method

---

[7] Courts in other circuits have reached the same conclusion.  *See, e.g.*, *Norkunas v. Wynn Resorts Holdings, LLC*, No. 2:07CV00096RLHPAL, 2007 WL 2949569, at *3-4 (D. Nev. Oct. 10, 2007) *aff'd sub nom. Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir. 2009) (no imminent injury despite plaintiffs' claim that they had a desire to return to the defendant's casino in the future and that they had visited Las Vegas at least once a year); *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (no imminent injury despite allegation that had plans to return to the property); *Brother v. Rossmore Tampa Ltd. P'ship*, No. 8:03CV1253T-24MAP, 2004 WL 3609350, at *5 (M.D. Fla. Aug. 19, 2004) (no imminent injury despite Plaintiff's submission of an affidavit stating an intent to return to the defendant's hotel in the future, and detailing his visits to the area several times a year); *Access for the Disabled, Inc. v. Rosof*, No. 805CV1413T30TBM, 2005 WL 3556046, at *2 n.3 (M.D. Fla. Dec. 28, 2005) (plaintiff's allegation that he intended to visit defendant's facility once a year in the future was not sufficient to establish standing); *Holt v. Am. City Diner, Inc.*, No. CIV. 05-1745 (CKK), 2007 WL 1438489, at *6 (D.D.C. May 15, 2007) (allegation that plaintiff had eaten at the defendant's restaurant and intended to return to the restaurant once the barriers were removed, coupled with his claim that he traveled to the area three times per week, was not enough to establish an imminent injury).

17

selected is effective.  28 C.F.R. § 36.303(c).  Recently, the United States Department of Justice ("DOJ") reaffirmed its view that a public accommodation can provide equal access to its goods and services through employee assistance rather than accessible technology.[8]  The Fair was a prime opportunity for Plaintiff benefit from effective communication with Vanderbilt (and other institutions).  Plaintiff cannot now claim that he faces an imminent threat of injury where he eschewed steps to obtain the very same information he claims is not accessible to him, and instead "raced to the courthouse" to file 50 nearly identical lawsuits.

### 2.    Plaintiff Did Not Suffer A Concrete And Particularized Injury

The United States Supreme Court requires that any plaintiff demonstrate a "concrete" injury that is "real" rather than "abstract," which is not "automatically satisfie[d] . . . whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016).  An ADA litigant must specifically show that he suffered a "distinct and palpable injury to himself."  *See Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15 CIV. 5432 (NSR), 2016 WL 6901314, at *5 (S.D.N.Y. Nov. 18, 2016) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)).

Plaintiff has not shown a concrete and personalized injury to satisfy Article III standing requirements.  The Second Amended Complaint does not address, for example, when Plaintiff visited the Website, whether and why Plaintiff is interested in attending Vanderbilt, or what specific programs he may be interested in.[9]  *See Mendez v. Apple, Inc.*, No. 18-cv-07550 (Preska,

---

[8] Brief for the DOJ as Amicus Curiae, p. 12, *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017) (Egan Dec. Ex. G, at pp. 9-12.)

[9] While Plaintiff's counsel represented at the pre-motion conference that Plaintiff is a student at Brooklyn Community College who wants to go to a four-year university, this is not pled in the Second Amended Complaint. (Egan Dec., Exhibit "F" (Transcript), at p. 2:21-23.)

18

J.) (Egan Dec., Exhibit "K"), at p. 4 ("*Mendez*") (dismissing website accessibility action under Rule 12(b)(1) where the plaintiff filed to identify the reason for visiting the website and what goods or services she was prevented from purchasing).

Plaintiff also includes "cut and paste" allegations that undermine the concreteness of his alleged injury.  Plaintiff alleges in this and every other case he filed against Fair attendees that he "attempt[ed] to access Defendant's website from his home in New York *after attending the Defendant's exhibit [at the Fair] in New York, NY.*"  (Sec. Am. Compl. at ¶ 9.; Ryan Dec. at ¶ 6) (emphasis added.)  However, Vanderbilt and 19 other institutions targeted with these lawsuits have represented in court papers, or submitted declarations from the representatives who attended the Fair, attesting they did not interact with Plaintiff at the Fair, have no record of him visiting their booth, and did not interact with an individual with an apparent visual impairment at the Fair.[10]  (Crespo Dec. at ¶¶ 3-6; *see supra*, n.1.)  Similarly, the pleadings recite a list of four generic Website barriers (*i.e.* "Lack of Alternative Text," "Empty Links That Contain No Text," "Redundant Links," and "Linked Images Missing Alt-text") that are included in all 50 cases that Plaintiff filed against Fair attendees, but do not address what information Plaintiff was attempting to access when he allegedly encountered these issues.  (Ryan Dec. at ¶ 6.)

The only specific area of the Website addressed in the Second Amended Complaint is the "net price calculator."  (Sec. Am. Compl. at ¶ 11.)  Plaintiff has now amended the pleadings or filed declarations in more than a dozen actions attesting to the importance of the "net price calculator" on the websites of various colleges and universities.  (*Id.*; *see supra*, n. 1.)  However, this tool was not referenced anywhere in the original pleadings in this or any of the 49 other

---

[10] This raises the question of whether Plaintiff's attendance at the Fair was, in whole or in part, a maneuver in anticipation of litigation (and specifically potential arguments directed at whether the court has personal jurisdiction over out-of-state attendees), which Plaintiff's conclusory, and jurisdiction-specific allegations would seem to suggest.  *See, e.g.,* Sec. Am. Compl. at ¶¶13-19, 22-23.)

cases that Plaintiff filed against Fair attendees.  *See* Compl.; *supra*, n. 1.  Plaintiff only included

these allegations following a pre-motion conference in *Camacho v. Point Park University*

addressing issues relating to personal jurisdiction over that out-of-state university.  (Egan Dec. at

¶ 3.)  Rather, the gravamen of Plaintiff's claim is that he could not access far more fundamental

and basic information about Vanderbilt, which, ironically, its representatives were available to

provide to Plaintiff had he approached their booth at the Fair.  (Sec. Am. Compl. at ¶¶ 23, 31, 36,

37(a), 43; Crespo Dec. at ¶ 4.).

       In light of Plaintiff's failure to allege any particular interest in Vanderbilt, and his

inconsistent, pattern allegations, Plaintiff has not satisfied his burden to demonstrate standing.

*See also Feltzin v. Clocktower Plaza Properties, Ltd.*, No. 216CV4329DRHAYS, 2018 WL

1221153, at *5 (E.D.N.Y. Mar. 8, 2018) (dismissing case based on lack of standing where

plaintiff filed more than 80 cases over three-and-a-half years); *Mendez*, at p. 10 (ADA litigant

who files multiple similar actions against different defendants must show that the "harms to be

remedied do exist and are indeed identical," and noting that "those who live by the photocopier

shall die by the photocopier").  For all the foregoing reasons, Plaintiff cannot demonstrate that he

has suffered an injury that is "concrete and particular."  *Feltzin v. Triangle Props. LLC*, No. 14-

cv-5131, 2016 U.S. Dist. LEXIS 192861, at *12 (E.D.N.Y Dec. 15, 2016).

       Thus, in addition to the absence of personal jurisdiction over Vanderbilt, Plaintiff also

lacks standing to assert a claim under Title III of the ADA.  Accordingly, the Court should

dismiss this action under Rule 12(b)(1) as well.[11]

---

[11] Should the Court find that it has personal jurisdiction over Vanderbilt but that Plaintiff does not have standing to
assert a claim under the ADA, the Court should nonetheless decline to exercise supplemental jurisdiction over
Plaintiff's remaining state and city claims, and dismiss this action in its entirety under Rule 12(b)(1).  *See, e.g.*,
*Lerner v. Fleet Bank N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) ("In most instances, a district court should decline
supplemental jurisdiction if all federal claims have been dismissed at the pleading stage."), *abrogated on other
grounds by, Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2016); *Bacon v. Walgreens Co.*, 91

## CONCLUSION

Based on the foregoing, Vanderbilt respectfully requests that this Court dismiss all claims for relief set forth in the Second Amended Complaint based on the absence of both personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and subject matter jurisdiction under Fed. Civ. P. 12(b)(1).

Dated: New York, New York
       June 24, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By:    */s/ John W. Egan*

     John W. Egan
     jegan@seyfarth.com
     620 Eighth Avenue
     New York, New York  10018
     Telephone:  (212) 218-5500
     Facsimile:  (212) 218-5526

     Julia N. Sarnoff
     jsarnoff@seyfarth.com
     975 F Street NW
     Washington, D.C. 20004
     Telephone: (202) 463-2400
     Facsimile: (202) 828-5393
     *Pro Hac Vice* to be filed

     *Attorneys for Defendant Vanderbilt University*

---

F. Supp. 3d 446, 453 (E.D.N.Y. 2015) (dismissing ADA claim and declining to exercise supplemental jurisdiction over remaining state and city claims).

57575036v.6