UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CAMACHO, | |
| Plaintiff, | 18 Civ. 10694 (KPF) |
| -v.- | **OPINION AND ORDER** |
| VANDERBILT UNIVERSITY, | |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Jason Camacho claims that a website operated by Defendant Vanderbilt University fails to comply with Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181-12189 (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); the Rehabilitation Act, 29 U.S.C. §§ 701 to 796; and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"), because the website denies equal access to visually impaired customers. Defendant moves to dismiss under two different subparts of Federal Rule of Civil Procedure 12(b): Rule 12(b)(2), for lack of personal jurisdiction, and Rule 12(b)(1), for lack of subject matter jurisdiction. In relevant part, Defendant argues that Plaintiff's claims do not arise out of business it has transacted in the state of New York, and that Plaintiff lacks standing to bring an ADA claim. For the reasons set forth below, the Court disagrees on both counts. Defendant's motion is therefore denied.

# BACKGROUND[1]

## A.    Factual Background

Plaintiff is a visually impaired and legally blind individual who resides in Brooklyn, New York.  (SAC ¶¶ 2, 20).  Plaintiff attends the Catholic Guild for the Blind, where he takes college preparation courses.  (Camacho Decl. ¶ 4). Plaintiff is interested in attending a four-year college.  (*Id.* at ¶ 5).

Defendant is a university that is incorporated in the state of Tennessee, with its principal place of business and campus in Nashville, Tennessee.  (SAC ¶ 21; Gaines Decl. ¶ 3).  Defendant has no offices or property in New York, nor does it hold any physical classes or seminars in New York.  (Gaines Decl. ¶¶ 5-7).  Defendant operates the website www.vanderbilt.edu (the "Website").  (SAC ¶ 22).  The Website provides a variety of information about Defendant, including information about the school location, its curriculum and programs of instruction, tuition and expenses, and available financial aid.  (*Id.* at ¶ 31). In addition, the Website allows prospective students to schedule visits and

---

[1]    This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #21)), the well-pleaded facts of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  As discussed more fully below, the Court may consider extrinsic evidence, such as declarations attached to the parties' submissions, in resolving the pending motion to dismiss for lack of personal or subject matter jurisdiction.  *See Barnet* v. *Ministry of Culture & Sports of the Hellenic Republic*, 391 F. Supp. 3d 291, 297-98 (S.D.N.Y. 2019); *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 338 n.1 (S.D.N.Y. 2015).  Individual declarations are referred to using the convention "[Name] Decl."

For ease of reference, the Court refers to the parties' briefing as follows: Defendant's Memorandum of Law in Support of its Motion to Dismiss as "Def. Br." (Dkt. #28); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss as "Pl. Opp." (Dkt. #29); and Defendant's Memorandum of Law in Further Support of its Motion to Dismiss as "Def. Reply" (Dkt. #32).

tours and to request additional information from admissions staff, but it does not allow them to schedule meetings with Vanderbilt representatives.  (SAC ¶ 10; Gaines Decl. ¶ 16; Tener Decl. ¶ 4).  Prospective students may not apply for admission or financial aid through the Website (Gaines Decl. ¶ 17; Tener Decl. ¶ 5), but current students may pay tuition and other costs through the Website.  (SAC ¶ 10).[2]  The Website also features a financial aid calculator and net price calculator, which allow prospective students to input information to receive estimates of the financial aid they might receive if they were to attend Defendant's school and the total cost of attending Defendant's school.  (*Id.*; Terner Decl. ¶¶ 6-8).  The Website explicitly states that estimates provided by the calculator are not binding and may not be matched by Defendant.  (Terner Decl. ¶¶ 6-8).

In the fall of 2018, Defendant participated in approximately 2,670 recruitment events across the country.  (Gaines Decl. ¶ 8).  One of these events was a college fair that took place at the Jacob K. Javits Convention Center in New York City in November 2018 (the "College Fair").  (SAC ¶ 17; Crespo Decl. ¶ 3).  Defendant's employees operated a booth at the College Fair to solicit prospective students from New York State.  (SAC ¶ 17; Crespo Decl. ¶ 4).  Plaintiff attended the College Fair to obtain information about the colleges

---

[2]     Certain facts concerning what can be done on the Website are in dispute.  For example, the Second Amended Complaint alleges that the Website can be used to: (i) apply for admissions and (ii) schedule meetings with faculty members, admissions counselors, and financial aid representatives.  (SAC ¶ 10).  Defendant has refuted these allegations through sworn affidavits.  (*See generally* Gaines Decl.; Tener Decl.).  Plaintiff does not attempt to introduce his own evidence in support of these allegations.  As discussed in greater detail below, the Court may accept as true the sworn facts contained in Defendant's affidavit that Plaintiff has failed to address.  *See infra* at 6-8, 20-21.

participating in the event.  (SAC ¶¶ 33-34; Camacho Decl. ¶¶ 6-7).  Plaintiff
spoke with representatives from several colleges at the College Fair, but he
does not claim to have spoken with any of Defendant's representatives.  (SAC
¶¶ 34-35; Camacho Decl. ¶¶ 6-8).  Defendant's representatives do not recall
interacting with Plaintiff or any other visually impaired person at the College
Fair.  (Crespo Decl. ¶ 5).

After attending the College Fair, Plaintiff visited the Website to gain
additional information about Defendant's school.  (SAC ¶ 35).  To browse the
Website, he attempted to use the JAWS screen-reader program — a screen
reading software program designed to allow visually impaired individuals to
access websites.  (*Id.* at ¶¶ 27, 33).  While visiting the Website, Plaintiff
encountered multiple access barriers that prevented the JAWS screen-reader
from working, and inhibited Plaintiff from understanding and engaging with the
Website's content.  (*Id.* at ¶ 37).  Generally, the Website contained "pop-up
boxes" in conjunction with its drop-down menus that enabled its users to
navigate the Website.  (*Id.* at ¶ 11).  These "pop-up boxes" were not adequately
labeled, however, and were thus incompatible with the JAWS screen-reader,
inhibiting Plaintiff from navigating to the sections of the site named "About,"
"Admissions," "Academics," and "Research."  (*Id.*).  Plaintiff was also unable to
utilize the Website's net price calculator, because it was incompatible with the
JAWS screen-reader program: Plaintiff was unable to accept the conditions
attendant to the calculator and was unable to input his information in the
calculator.  (*Id.*).  Because of these barriers, Plaintiff was unable to learn

information about Defendant's school, which information he considered necessary for him to make an informed decision regarding whether he would be interested in visiting, and potentially applying to, the school. (*Id.* at ¶¶ 43, 50; Camacho Decl. ¶¶ 10-13).

**B.    Procedural Background**

Plaintiff filed his Complaint on November 15, 2018.  (Dkt. #1).  On March 5, 2019, Defendant applied for leave to file a motion to dismiss the Complaint.  (Dkt. #10).  The Court granted Plaintiff leave to file an amended complaint on March 15, 2019.  (Dkt. #13).  Plaintiff filed his Amended Complaint on March 21, 2019.  (Dkt. #14).  Thereafter, on April 26, 2019, Defendant applied for leave to file a motion to dismiss the Amended Complaint. (Dkt. #15).  The Court held a pre-motion conference concerning Defendant's anticipated motion to dismiss on May 7, 2019, in which it granted Plaintiff leave to further amend his complaint.  (Dkt. #19 (transcript of proceedings)). Plaintiff filed his Second Amended Complaint on May 23, 2019.  (Dkt. #21). Defendant filed its motion to dismiss on June 24, 2019.  (Dkt. #28).  Plaintiff filed an opposition brief on June 28, 2019.  (Dkt. #29).  This motion became fully briefed when Defendant filed its reply brief on August 23, 2019.  (Dkt. #32).

**DISCUSSION**

**A.    The Court Has Personal Jurisdiction over Defendant**

The Court begins by discussing Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  As set forth in the remainder of this section, the Court concludes that it does have personal jurisdiction over Defendant.

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  To survive a motion to dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." *Id.*  A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings. *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

To determine whether the exercise of personal jurisdiction is proper, a court conducts a two-part inquiry: *First*, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state. *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Here, the relevant inquiry centers on New York's long-arm statute, which provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R. § 302(a)(1). Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotations omitted).

*Second,* a court must examine whether the exercise of personal jurisdiction comports with due process. *Licci*, 732 F.3d at 168. "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 169 (internal quotation marks omitted). Put differently, due process is not violated when a defendant is "haled into court in a forum State based on his own affiliation with the state[.]" *Walden* v. *Fiore*, 571 U.S. 277, 286 (2014). In deciding whether the exercise of jurisdiction is reasonable, a court considers "[i] the

7

burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies."
*Robertson-Ceco*, 84 F.3d at 568 (quoting *Asahi Metal Indus. Co., Ltd.* v. *Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113-14 (1987)).  While due process is distinct from a statutory basis for personal jurisdiction, the Second Circuit has noted that it would be the "rare" case where personal jurisdiction was proper under New York's long-arm statute but not under a due process analysis. *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks omitted).

### 2.  Discussion

Plaintiff claims that Defendant has engaged in three types of transactions that subject it to the Court's jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1):  (i) Defendant receives tuition payments from students who come from New York; (ii) Defendant participates in college recruiting events, like the College Fair, to recruit applicants from New York; and (iii) Defendant maintains the Website.  While the first two transactions do not subject Defendant to personal jurisdiction in this action, the third does.

### a. Defendant's Receipt of Tuition Payments from New York Residents and Participation in Recruiting Events in New York Do Not Subject It to Personal Jurisdiction in New York

Few words need be expended on Plaintiff's first two justifications for personal jurisdiction over Defendant in this suit: that Defendant (i) receives tuition payments from students who come from New York; and (ii) participates in college recruiting events in New York. Neither of these transactions is sufficient under the second prong of New York's long-arm statute, because Plaintiff's claims did not arise out of either transaction. "New York courts have held that a claim arises from a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 249 (2d Cir. 2007) (quoting *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (alterations omitted)). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Sole Resort*, 450 F.3d at 103 (citation omitted).

Plaintiff's claims arise out of his attempts to access the Website. They have no articulable nexus to Defendant's receipt of tuition payments from New York students. In his Second Amended Complaint, Plaintiff alleges that "[u]pon information and belief, a substantial number of students attending Defendant's school are from New York State." (SAC ¶ 13). This allegation was fleshed out in Plaintiff's briefing, where he estimated that Defendant receives approximately $31,902,150 in tuition from 483 students from New York that

attend Defendant's school. (Pl. Opp. 5-6). But even accepting this allegation as true,[3] Plaintiff has not demonstrated how his inability to access the Website is caused by, or in any way related to, tuition payments received by Defendant from students in New York.[4]

Nor is there an articulable nexus between Plaintiff's claims and Defendant's participation in recruiting events in New York. Plaintiff does not claim that he was denied physical access to any of Defendant's recruiting events or was subjected to any tortious or otherwise unlawful conduct while attending the College Fair. Plaintiff does not even allege that any of Defendant's representatives or signage at the College Fair directed him to attempt to access the Website.[5] *See Camacho* v. *Northeastern University*, No. 18 Civ. 10693 (ER), 2019 WL 5190688, at *5 (S.D.N.Y. Oct. 15, 2019) (finding that no connection existed between an ADA website access claim and a

---

[3] "[A] memorandum of law is 'not evidence at all' — for the purposes of a motion to dismiss for personal jurisdiction, complaints and declarations are." *Camacho* v. *Northeastern Univ.*, No. 18 Civ. 10693 (ER), 2019 WL 5190688, at *6 (S.D.N.Y. Oct. 15, 2019) (quoting *Gianullo* v. *City of New York*, 322 F.3d 139, 142 (2d Cir. 2003)). For this reason, the Court would not consider Plaintiff's contentions about how much revenue New York students generate for Defendant.

[4] Plaintiff cites a single case for the proposition that having students who come from a state can subject a university to that state's jurisdiction: *Excelsior College* v. *Frye,* 306 F. Supp. 2d 226, 229 (S.D. Cal. 2008). "But *Excelsior* deals with an online school whose online students lived in New York.... The transactions in *Excelsior* that gave rise to the complaint had a nexus to the claim alleged because the education of those students occurred online." *Camacho*, 2019 WL 5190688, at *6. In this matter, however, Plaintiff has alleged neither that Defendant is an online college nor that he attempted to access online educational services.

[5] As discussed below, the Court concludes that Plaintiff has alleged that Defendant uses its website in conjunction with its recruiting fairs. (*See* SAC ¶ 18). But because Plaintiff has not alleged that his own interactions with Defendant at the College Fair led him to seek out the Website, any nexus between Plaintiff's claim and Defendant's recruiting efforts is, at best, coincidental and thus insufficient to establish personal jurisdiction. *See Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006)

university's recruiting events where the plaintiff failed to allege that the recruiting events directed him to the university's website).

Because no nexus, substantial or otherwise, exists between Plaintiff's claims and Defendant's receipt of tuition payments or participation in college fairs in New York, these transactions do not provide the Court with personal jurisdiction over Defendant.

### b. Defendant's Website Does Subject It to Personal Jurisdiction in This Matter

Plaintiff's third argument, that the Website constituted a transaction that exposes Defendant to jurisdiction in the state of New York, requires an analysis of the capabilities of the Website as well as a dissection of the specific portions of the Website to which Plaintiff was allegedly denied access. After completing this inquiry, the Court concludes that Defendant's operation of the Website does subject it to personal jurisdiction in this matter.

### i. New York's Long-Arm Statute

Operating a website that may be accessed from New York, without more, does not bring the operator within the jurisdiction of New York courts. *Best Van Lines*, 490 F.3d at 253. When considering whether to exercise personal jurisdiction over a defendant because of its website, the Second Circuit admonishes district courts to look to the degree of interactivity and commercial nature of the exchange of information that occurs on the site. *Id.* at 252 ("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York."). A website's

11

degree of "interactivity," as explained by the Second Circuit, exists on a spectrum. *See id.* At one end of the spectrum are passive websites, which do not confer jurisdiction. These websites generally "only provide[ ] information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website." *A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011). On the other end are fully interactive websites, which "knowingly transmit goods or services to users in other states," and are sufficient to confer personal jurisdiction pursuant to section 302(a)(1). *Royalty Network Inc.* v. *Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009). "Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

Categorizing the Website within this three-part framework has proven difficult. The Court accepts as true Plaintiff's allegation that Defendant's students may pay their tuition on the Website (SAC ¶ 10), and that certain of Defendant's students reside within New York (*id.* at ¶ 13). The Website's capacity to facilitate tuition payments online indicates that it may be used for commercial activity, which in turn suggests that the Website is fully interactive. Even so, the Court concludes that the Website's capacity for online

tuition payments does not, by itself, establish the Website as a basis for personal jurisdiction. Two considerations support this conclusion.

*First*, "the existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." *Diaz* v. *Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *7 (S.D.N.Y. June 4, 2019) (quoting *Alibaba Grp. Holding Ltd.* v. *Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018)). And while Plaintiff does contend that Defendant has students in New York and that Defendant's students might pay their tuition through the Website, he does not take the final, crucial step of alleging that New York students use the Website to pay their tuition. The Court must construe the pleadings in the light most favorable to the Plaintiff, but it may not premise jurisdiction on favorable inferences drawn from them. *Shipping Fin. Servs. Corp.* v. *Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Because Plaintiff has not alleged that any tuition payments from New York were made on the Website, the Court may not assume that any commercial activity occurred in New York.

*Second*, even if the Website did facilitate some degree of commercial activity in New York, and thus constituted a business transaction within New York, it could only satisfy New York's long-arm statute if Plaintiff's claim arose from that transaction. N.Y. C.P.L.R. § 302(a)(1). Put differently, it is not enough for the Website to transact business within the state — the claims at issue must arise from the Website's transactions of business. *See Best Van*

*Lines*, 490 F.3d at 254-55 (concluding that even if defendant's website did transact business in New York by accepting New York donations, it would not establish personal jurisdiction because plaintiff's claims did not arise from acceptance of online donations); *see also DH Servs., LLC* v. *Positive Impact, Inc.*, No. 12 Civ. 6153 (RA), 2014 WL 496875, at *7 (S.D.N.Y. Feb. 5, 2014) (finding that even if receipt of donations from New York through a website constituted commercial activity, it would not subject defendant to personal jurisdiction, because plaintiff claimed trademark infringement and allegedly infringing marks did not appear on the page of the website on which donations could be made). Plaintiff has not claimed that he tried to access the pages of Defendant's website that would allow him to pay tuition.[6] Consequently, Plaintiff has not alleged that he was denied access to the portions of the Website through which commercial activity is transacted. Because there is no nexus between tuition payments made through the Website and Plaintiff's claims, the fully interactive portions of the Website cannot establish personal jurisdiction under New York's long-arm statute.

Plaintiff does, however, make specific allegations that he attempted to access — and was denied access to — other portions of the Website, including the page which hosted the net price calculator. To review, this tool allows users to input certain information about themselves and receive an estimate of how much financial aid they might receive from Defendant, if they were to be

---

[6]     Nor would Plaintiff have had a reason to do so; because he is not a student at Defendant's school, he has no occasion to pay tuition to Defendant.

admitted as a student. (SAC ¶ 10). The Court concludes that the calculator feature of the Website would place it within the middle of the interactivity spectrum, because it "permits the exchange of information between users in another state and the defendant." *Citigroup Inc.*, 97 F. Supp. 2d at 565; *see also Sullivan* v. *Jersey Strong Licensing LLC*, No. 18 Civ. 7753 (RA), 2019 WL 3066492, at *3-4 (S.D.N.Y. July 12, 2019) ("Courts have repeatedly found that websites in the middle ground of the [interactivity] spectrum have 'a level of interactivity that extends well beyond merely making information available to visitors[,]' but are not 'fully interactive for jurisdictional purposes because they neither sell goods or services through their website nor charge membership fees to their registered users.'" (quoting *Royalty Network*, 638 F. Supp. 2d at 419 (citations and alterations omitted))).

When a website falls in the middle of the interactivity spectrum, "the "jurisdictional inquiry requires closer evaluation of its contacts with New York residents' to determine if Defendant engaged in purposeful activity in New York." *Sullivan*, 2019 WL 3066492, at *3 (quoting *Royalty Network*, 638 F. Supp. 2d at 419). In conducting this inquiry, sister courts have evaluated whether defendants purposefully targeted New Yorkers with their websites. *See Touro Coll.* v. *Fondazione Touro Univ. Rome Onlus*, No. 16 Civ. 3136 (DAB), 2017 WL 4082481, at *8-9 (S.D.N.Y. Aug. 31, 2017) ("The question then, is whether Defendants purposefully targeted New York users through their website." (citing *Best Van Lines*, 490 F.3d at 252)), *aff'd*, 738 F. App'x 25 (2d Cir. 2018) (summary order); *see also Girl Scouts of U.S.* v. *Steir*, 102 F. App'x

217, 219-20 (2d Cir. 2004) (summary order) (affirming district court finding that a national website that manifested no intent to target New York users or to avail itself of the benefits of New York law was insufficient to establish personal jurisdiction).

The issue of whether Plaintiff has adequately pleaded facts suggesting that Defendant targeted New York residents through the Website must be decided on a razor-thin margin. The Second Amended Complaint contains no explicit allegation that portions of the Website are targeted specifically at New York residents, as opposed to the general population. Nor does it incorporate any clear contention that Defendant encouraged individuals at recruiting events in New York to visit its website. Instead, the Second Amended Complaint includes only one sentence relevant to whether the Website was targeted at New York, in the form of a grammatically-confused assertion: "The Defendant's actions of marketing and soliciting prospective students in New York State by various means including, but not limited to, exhibiting at college fairs in New York City and utilizing their website in conjunction therewith[.]" (SAC ¶ 18). This single sentence is susceptible to multiple interpretations, including: (i) a claim that Defendant used its Website at recruiting events to market to prospective students at those events in New York; or (ii) a claim that Defendant used both its Website and, separately, its presence at recruiting events, to market to prospective students in New York. If the former is correct, Plaintiff pleaded that Defendant sends its employees to recruiting events in New York City, where they use the Website as part of their efforts to market to

prospective students.  This allegation would suffice to establish that Defendant

has availed itself of the privilege of conducting activities in New York, and

intentionally brought the Website within the state.  If the latter is correct,

Plaintiff would have made only a conclusory allegation that Defendant used its

nationally-available website to solicit students in New York.  This would not be

sufficient to establish personal jurisdiction.  *See Girl Scouts of U.S.*, 102 F.

App'x at 219-20.

Ultimately, the Court is bound to read Plaintiff's jurisdictional allegations

"in the light most favorable to the plaintiff" and to resolve doubts in "the

plaintiff's favor." *Elsevier, Inc.*, 77 F. Supp. 3d at 341 (quoting *A.I. Trade Fin.,*

*Inc.*, 989 F.2d at 79-80). [7]  In light of this, the Court understands that Plaintiff

intended to plead that Defendant targets its website at New Yorkers by using

the website to solicit applications during college fairs held in New York State.

Coupling this allegation with the alleged interactivity of the Website, the Court

concludes that New York's long-arm statute is satisfied.

### ii.    The Due Process Clause of the United States Constitution

If the long-arm statute permits personal jurisdiction, the Court must

analyze whether the exercise of personal jurisdiction comports with the Due

---

[7]    The Court further notes that Plaintiff failed to present this line of argument in its briefing, only stating that "Defendant has purposefully availed itself of New York by soliciting and marketing to prospective customers in New York which activities include its exhibition at the Javits Center and its website." (Pl. Opp. 7).  This deficient briefing does not, however, free the Court from its obligation to read the pleadings in the light most favorable to Plaintiff, at least where, as here, the moving party has not introduced any outside evidence that the pleading is false.  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (observing that a court may consider matters outside the pleadings in a jurisdictional dispute).

Process Clause of the United States Constitution.  To review, "[t]o establish personal jurisdiction over a defendant, due process requires a plaintiff to allege [i] that a defendant has 'certain minimum contacts' with the relevant forum, and [ii] that the exercise of jurisdiction is reasonable in the circumstances." *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015) (internal citation omitted).  For purposes of this inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction.  *Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 & n.8 (1984).  Here, the parties agree that New York courts may not exercise general jurisdiction over Defendant, so the Court looks to whether specific jurisdiction exists.  The Second Circuit has advised that it would be the "rare" case where personal jurisdiction was proper under New York's long-arm statute but not under a due process analysis.  *Eades*, 799 F.3d at 168.  The instant matter is not one of those rare cases.

Minimum contacts necessary to support jurisdiction exist where "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Id.* (quoting *Licci*, 732 F.3d at 170).  Here, the Court has already found sufficient Plaintiff's allegations that Defendant purposefully availed itself of New York law.  Defendant has repeatedly entered New York to attend recruiting events with the goal of

soliciting New York students to apply to its school, and Defendant has used its Website at those recruiting events to further that goal. Thus, Defendant has the requisite minimum contacts with New York.

When a defendant has the requisite minimum contacts with the forum state, it may still defeat jurisdiction on due process grounds if it can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Licci*, 732 F.3d at 173 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 477 (1985)). When assessing whether the exercise of jurisdiction would be reasonable, courts typically consider:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d at 164. Here, however, Defendant has made no effort to address any of these considerations or to argue that that the exercise of jurisdiction over it would be unreasonable. Unguided by arguments from the parties, the Court finds that the balance of the factors weighs in favor of Plaintiff.

With respect to the second and third factors, the Court finds that New York — Plaintiff's home state — has a "manifest interest in providing effective means of redress for its residents," *Burger King*, 471 U.S. at 473 (internal quotation marks omitted), and that maintaining the action here would be convenient and efficient for Plaintiff because he and, presumably, some of his

witnesses and other evidence, are located here. *Chloe*, 616 F.3d at 173. The fourth and fifth factors appear to be neutral. *Id.* at 173. With respect to the first factor — the burden imposed on Defendant in having to litigate this action in New York — the Court finds this factor incapable of tilting the scales given modern advances in communication and transportation. *See Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." (internal quotation marks omitted)). Accordingly, considering all the above, the Court finds that the exercise of jurisdiction over Defendant is wholly reasonable.

Finally, although the Court has found it can exercise jurisdiction over Defendant, it is worth reiterating that Plaintiff is only required to make a *prima facie* showing of personal jurisdiction at this stage. *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[I]f the ultimate facts do not bear out jurisdiction by a preponderance of the evidence, the case will later be dismissed for lack of personal jurisdiction[.]" *United States* v. *Machat*, No. 08 Civ. 7936 (JGK), 2009 WL 3029303, at *8 (S.D.N.Y. Sept. 21, 2009); *see also Anderson* v. *Indiana Black Expo, Inc.*, 81 F. Supp. 2d 494, 498 (S.D.N.Y. 2000) ("[A] plaintiff ultimately bears the burden of establishing jurisdiction over a defendant by a preponderance of the evidence[.]").

**B.    The Court Has Subject Matter Jurisdiction over the Instant Action**

Having found that it has personal jurisdiction over Defendant, the Court turns to Defendant's second basis for its motion to dismiss: that the Court lacks subject matter jurisdiction over Plaintiff's ADA claim because Plaintiff does not have standing to bring it.  The Court concludes that Plaintiff has standing.

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert lack of subject-matter jurisdiction as a defense by motion.  Fed. R. Civ. P. 12(b)(1).  To assert federal subject-matter jurisdiction, a party must have Article III standing — "the personal interest that must exist at the commencement of the litigation."  *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis* v. *Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)).  A standing issue may be raised at any stage in a litigation, *id.* (citing *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "'[t]he party invoking federal jurisdiction bears the burden of establishing the[ ] elements' of Article III standing," *id.* (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1997)).

On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based.  *Carter*, 822 F.3d at 55.  When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.

2011)).  For purposes of a Rule 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction.  *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  In contrast, to support a fact-based Rule 12(b)(1) challenge, a defendant may proffer evidence beyond the pleadings.  *Id.* (citing *Amidax*, 671 F.3d at 145).  To oppose such a motion, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion … reveal the existence of factual problems" with respect to jurisdiction.  *Id.* (quoting *Exchange Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### 2.    Standing Generally and in ADA Actions

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const., Art. III, § 2.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 156 (2014) (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560).  "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision."  *Id.*  Where, as here, a plaintiff seeks injunctive relief, he

must also prove that the identified injury in fact presents a 'real and immediate threat of future injury' often termed a 'likelihood of future harm.'" *Bernstein* v. *City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

"In reviewing standing under the ADA, 'a broad view of constitutional standing is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Feltzin* v. *Clocktower Plaza Properties, Ltd.*, No. 2:16 Civ 4329 (DRH) (AYS), 2018 WL 1221153, at *3 (E.D.N.Y. Mar. 8, 2018) (quoting *Rosa* v. *600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016)). In actions brought under the ADA, the Second Circuit has "found standing (and therefore an injury in fact)," *Kreisler* v. *Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013), where a plaintiff "[i] alleges past injury under the ADA, [ii] shows that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue, and [iii] shows that it is reasonable to infer that he or she "intend[s] to return to [the public accommodation]." *Harty* v. *Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013) (summary order) (alterations in *Harty*) (quoting *Kreisler*, 731 F.3d at 187-88).

### 3.  Discussion

Plaintiff has sufficiently alleged each of the three factors necessary to find standing under the ADA. *First*, Plaintiff claims that he suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states

that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. (SAC ¶ 11).[8]  Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. (*Id.* at ¶ 42).  The Second Circuit has made clear that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188.[9]

*Second*, Plaintiff alleges that he visited the Website on multiple occasions and has not been able to access its content. (SAC ¶ 33).  This supports an inference that the Website has not been altered to fix the barriers Plaintiff encountered, and that he will continue to be unable to access the Website.

---

[8]     Defendant objects to the fact that Plaintiff's initial complaint did not mention the net price calculator, and that all allegations regarding Plaintiff's inability to access this tool were added only when he amended the complaint. (Def. Br. 19-20).  The Court fails to see the relevance of this information.  Defendant is moving to dismiss Plaintiff's Second Amended Complaint, not his initial complaint, and must contend with the allegations contained therein.

[9]     Defendant argues that Plaintiff cannot demonstrate an imminent injury, because he "elected not to take advantage of readily available means to obtain audible, personalized information and assistance at the [College] Fair." (Def. Br. 17-18).  Defendant argues, without citation to case law, Plaintiff's inability to access publicly accessible information through the Website cannot give rise to an ADA claim, because Plaintiff could have obtained that same information in-person by speaking to Defendant's employees at the College Fair. (*Id.*).  But even if Plaintiff's claim would be defeated if he could have obtained the information through some other, accessible, means, the Court has no basis to conclude that the College Fair presented Plaintiff with such an opportunity.  Specifically, Defendant has not proffered evidence that its employees were ready to provide Plaintiff with all the information he could have received on the Website, including an estimate of how much financial aid he might receive from Defendant.  Without such evidence, the Court will not accept the assertions contained within Defendant's briefing as true. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 55-57 (2d Cir. 2016) ("[T]he plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.")

*Third*, Plaintiff alleges facts in his Second Amended Complaint that, when read in conjunction with his declaration, allow a reasonable inference that he intends to return to the Website.  The sufficiency of Plaintiff's allegations is best illustrated by comparing them to two cases with analogous fact patterns but contrasting outcomes, namely, the *Kreisler* and *Harty* cases previously cited in this section.  In *Kreisler*, the plaintiff, a man who required a wheelchair for movement, alleged that he was deterred from entering a restaurant in his neighborhood by the presence of a seven-to-eight-inch step in front of the building.  731 F.3d at 187-88.  The plaintiff further alleged that he would have liked to enter the restaurant if he were able to access it.  *Id.*  The Second Circuit found that these allegations were sufficient to establish that the plaintiff intended to return to the restaurant.  *Id.*  In *Harty*, by contrast, the plaintiff, a resident of Florida, argued that he had been denied access to a hotel in Stamford, Connecticut when, on a single occasion, he stayed in Stamford overnight.  536 F. App'x at 154-55.  The plaintiff claimed that he would return to Stamford for an overnight stay, that he had family in a nearby city, and that he often traveled to Stamford when visiting his family.  *Id.*  The Second Circuit held that the plaintiff had failed to demonstrate a basis for inferring that he would return to Stamford for an overnight stay, because he did not live near Stamford, in all his trips to visit his family he had only stayed in Stamford a single night, and he did not provide any evidence of a concrete plan to stay there overnight in the future.  *Id.*

The Court concludes that Plaintiff has alleged facts that place him much closer to those in *Kreisler* than *Harty*. Plaintiff claims that he wishes to attend a four-year college and attended the College Fair to get more information about colleges to which he might apply. (Camacho Decl. ¶¶ 5-7).[10] Thereafter, he visited Defendant's website to learn about Defendant's school and whether it would meet his needs. (*Id.* at ¶ 8; SAC ¶ 35). Plaintiff alleges that he has visited the Website on multiple occasions, and that "[i]f the Website is remediated and becomes accessible, I will immediately re-visit it to determine if the Defendant's school meets my needs and, if so, I will visit its campus in the very near future and apply for admission." (Camacho Decl. ¶ 13). Read together, these allegations establish that Plaintiff (i) tried to visit the Website on multiple occasions; (ii) has a stated motivation for returning to visit the Website in the future; and (iii) may easily return to the Website should it be made accessible. This is sufficient to allow a reasonable inference that Plaintiff will return to the Website.

Despite all of this, Defendant argues that Plaintiff lacks standing to bring this suit because he filed 50 nearly identical suits against various colleges and universities across the country. (Def. Br. 16-20). The Court accepts Defendant's representation that Plaintiff filed 50 other complaints containing similar, if not identical, allegations against other institutions of higher

---

[10]    Because Defendant has introduced outside evidence in the form of declarations that it relies upon in the sections of its briefing relating to standing (*see* Def. Br. 16-20), the Court understands that Defendant has mounted a fact-based challenge to subject matter jurisdiction. *See Carter*, 822 F.3d at 56-57. Thus, the Court may consider the evidence Plaintiff has submitted to bolster his jurisdictional arguments. *Id.*

learning.[11]  After careful consideration, however, the Court concludes that those similar complaints do not deprive the Court of subject matter jurisdiction in this matter.

Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future if he could visit their website" is present in many, if not all, of the other complaints.  (Def. Br. 16).  From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.  (*Id.*).  If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states.  (*Id.*).  Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future."  (*Id.* (quoting *Feltzin*, 2018 WL 1221153, at *5)).

Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark.  Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself.  Thus, Defendant need not have shown that he intended to "return"[12] to Defendant's school in Nashville, Tennessee.  He is only required to

---

[11]  In the pre-digital era, the Court would have referred to the complaints as carbon-copied.

[12]  Although Defendant employs the word "return," the Court notes that Plaintiff did not allege that he has ever visited Defendant's school.  (Def. Br. 16-17).

have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. (Camacho Decl. ¶ 14). Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person. (*Id.*). The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

Defendant also argues that, in light of the numerous other suits, Plaintiff was required to plead a "particular interest" in Defendant's school to demonstrate standing, citing both *Feltzin* and *Mendez* v. *Apple, Inc.*, No. 18 Civ. 7550 (LAP), 2019 WL 2611168 (S.D.N.Y. March 28, 2019). (Def. Br. 18-20). Neither of these cases supports Defendant's proposition. In *Feltzin*, the Court noted that the plaintiff, a resident of Florida, had filed ADA cases against eighty different businesses in the Eastern District of New York. 2018 WL 1221153, at *5. The court granted a motion to dismiss for lack of standing, but not because of the plaintiff's frequent filing. Rather, the court found that it was not reasonable for it to infer that the plaintiff would return to the defendant's property — a place he did not live near, had been to once, and had no concrete plans to return to. *Id.* at *5-6. Similarly, the court in *Mendez* specifically stated that there is "nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." 2019 WL 2611168, at *4. The court found that the plaintiff

lacked standing because she had failed to plead with any specificity that she suffered an injury. Here, Plaintiff has adequately pleaded facts that show he suffered an actual injury, and which allow a reasonable inference that he will return to the Website. Plaintiff does not lack standing here merely because he believes that he has been similarly injured by other colleges and universities.

Plaintiff has: (i) alleged past injury under the ADA; (ii) shown that it is reasonable to infer from the Second Amended Complaint that the discriminatory treatment will continue, and (iii) shown that it is reasonable to infer that he intends to return to the Website. *See Harty*, 536 F. App'x at 155. Accordingly, the Court concludes that Plaintiff has standing to initiate the instant action, and the Court has subject matter jurisdiction over the same.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 22. On or before **January 6, 2020**, Defendant shall file a responsive pleading. On or before **January 13, 2020**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:     December 4, 2019
           New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge